**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John McKENZIE et al.,**
**Defendants-Appellees,**

v.

**CBS, INC., Movant-Appellant.**

**In re CBS, INC., Petitioner.**

**Nos. 83–3028, 83–3029.**

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1983.

Dissenting Opinion Jan. 28, 1983.

———

Robert E. Barkley, Jr., J. David Forsyth, Owen A. Neff, and Francis R. White III, New Orleans, La., movant-appellant.

John P. Volz, U.S. Atty., W. Glenn Burns, Asst. U.S. Atty., New Orleans, La., for U.S.A.

Ralph Capitelli, New Orleans, La., for McKenzie.

Ralph S. Whalen, New Orleans, La., for Bonura, Farrar, Reboul & Brink.

Wally Rothschild, New Orleans, La., for Woodall & LeBlanc.

Before GEE, RANDALL and TATE, Circuit Judges.

BY THE COURT:

Applying to the request of CBS, Inc. for a stay of the order issued by the United States District Court for the Eastern District of Louisiana on January 15, 1983, in *United States v. McKenzie,* the same criteria as were outlined in the opinion of this court issued on January 15, 1983, we grant the request and we stay that order. We recognize that the district court has now limited the relief granted both geographically and temporally. However, our review of the transcript of the proceedings held by the district court on the evening of January 15, 1983 (which includes the district court's findings), indicates that on what the district court properly viewed as an important issue—the impact of the program to be shown by CBS on the Dallas metropolitan area jury pool—the evidence is too speculative to support the relief granted.

STAY GRANTED.

Circuit Judge GEE would deny the stay of the modified order issued on January 15, 1983 for reasons to be stated in an opinion to be filed.

GEE, Circuit Judge, dissenting:

I would not have interfered with the attempt of the trial judge to protect his ve-

nire from exposure to a tendentious presentation in the circumstances appearing here. Admittedly, no one can be certain in what circumstances the Supreme Court would approve the sort of order issued by the trial court, since—though it has often recognized that somewhere there is a limit—it has never approved one.[1] But where the order was limited geographically to the Dallas area, to which venue had already once been transferred because of excessive pre-trial publicity, and temporally, until the judge could obtain control of the venire; where the court could know nothing of what might be televised, because the network refused to tell him anything of the program's contents; where it was to be aired on one of the most-viewed programs in the nation, immediately following a Dallas Cowboys' play-off game held in Dallas;[2] and where only two or three days notice was given the defendants that the juror pool was to be exposed to such matter, so that little or no time was available to develop such evidence as the majority would require of the program's impact on the Dallas metropolitan jury pool—assuming that this could have been done at all, in view of the network's refusal to disclose even to the court anything of the program's contents—I do not think the trial court abused its discretion in attempting to protect the defendants' Sixth Amendment rights by the limited order (as modified) which it issued.

More could be said, but I write no further since for the present the matter is moot. The program was aired and was, predictably, both graphic and to my mind highly tendentious. What its effect has been on the veniremen who will assemble within a few days for the trial, I cannot tell, or whether, should the trial court find it necessary once more to change venue to another place, the network will pursue the case there with an "update."[3] These are not the questions our panel was called on to address. I simply conclude that, deprived of evidence by the network's recalcitrance, the trial court was entitled to assume the worst and did not abuse its discretion in issuing the limited order. As stated earlier, I would have refused to stay it.

---

**1.** Nor did it do so here. *Dale Bonura v. CBS, Inc.,* —— U.S. ——, 103 S.Ct. 665, 74 L.Ed.2d 592 (1983) (per Justice White, in-chambers).

**2.** Complete, as the event proved, with teasers during game coverage inviting viewers to stay tuned to see "the story that a federal judge tried to keep off the air."

**3.** According to a press report published since the above was written, the trial court has already found it necessary to delay the trial "to March 7, because of a January 16 report about the case on CBS's '60 Minutes.'" The Wall Street Journal, Jan. 26, 1983, at 1, col. 3.